UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ETHAN SEITZ,<br><br>Defendant. | Case No. 21-cr-279 (DLF) |

**UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM**

Pursuant to the Court's 8/26/2024 Minute Order, the United States respectfully files this Supplemental Sentencing Memorandum in aid of sentencing, which is currently set for September 13, 2024. The government respectfully recommends that the Court impose the statutory maximum – 12 months of incarceration, 12 months of supervised release, restitution in the amount of $500, and a $25 special assessment.

**I.    PROCEDURAL BACKGROUND**

On August 8, 2023 this Court convicted the defendant, Ethan Seitz, of violating 18 U.S.C. § 1512(c)(2) and § 1752(a)(2) by way of a stipulated bench trial. *See* Docs. 61, 62, 63. Sentencing was initially scheduled for January 8, 2024, but the Court continued sentencing on Seitz's motion in light of the Supreme Court's grant of certiorari in *Fischer v. United States*. *See* Doc. 65; 12/22/23 Minute Order.

On June 28, 2024, the Supreme Court issued an opinion in *Fischer v. United States*, 144 S. Ct. 2176, 2181 (2024). *Fischer* held that Section 1512(c) does not cover "all means of obstructing, influencing, or impeding any official proceeding." *Id.* at 2185. The Court held that, to prove a violation of Section 1512(c)(2), the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or attempted

to do so. *Id.* at 2186, 2190. The Supreme Court remanded the case to the D.C. Circuit for further proceedings and to assess the sufficiency of the indictment on that count. *Id.* at 2190.

Following the *Fischer* decision, Seitz moved for reconsideration of the Court's finding of guilt on both counts. *See* Doc. 77. The government opposed the motion and simultaneously moved to vacate Seitz's conviction on Count One of the Indictment, for his violation of 18 U.S.C. § 1512(c)(2). *See* Doc. 78. The Court granted the government's motion to vacate and denied Seitz's motion for reconsideration. *See* 8/26/24 Minute Order. The Court subsequently ordered a revised presentence investigation report and any supplemental sentencing memoranda. *See* 9/2/24 Minute Order.

## II.   FACTUAL BACKGROUND

The government fully incorporates by reference all of the relevant conduct described in the factual background section of its initial sentencing memorandum. *See* Doc. 72 at 2-13.

## III.   STATUTORY PENALTIES

In light of the vacatur of Seitz's conviction on Count One of the Indictment, Seitz faces up to one year of imprisonment, a term of supervised release of not more than one year, a fine of $100,000, restitution, and a mandatory special assessment of $25 on Count 3 of the Indictment.

## IV.   THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Here, the government agrees with the calculations in the Revised, Final Presentence Investigation Report ("PSR"), Doc. 80.

Count Three: 18 U.S.C. § 1752(a)(2)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
| U.S.S.G. § 2A2.4(b)(1)(A) | Physical Contact | +3 |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | -2 |

**Total Adjusted Offense Level:**     **11**

*See* PSR ¶¶ 44-54.

The U.S. Probation Office calculated Seitz's criminal history as category II, which is not disputed. PSR ¶¶ 58-60. Accordingly, based on Seitz's total adjusted offense level, after acceptance of responsibility, at 11, Seitz's Guidelines imprisonment range is 10 to 16 months' imprisonment.

V.    **REVISED RECOMMENDATION AND ARGUMENT**

The government fully incorporates by reference its discussion of the 18 U.S.C. § 3553(a) factors included in the government's original sentencing memorandum. *See* Doc. 72 at 16-23.

In the government's initial memorandum, the government recommended a mid-Guidelines sentence of 21 months of incarceration and 36 months of supervised release. In light of the vacatur of Seitz's conviction on Count One of the Indictment, and the now-operable statutory maximum, the government respectfully revises its recommendation to 12 months of incarceration and 12 months of supervised release. A sentence of 12 months of incarceration is near the middle of Seitz's recalculated Guidelines range of 10 to 16 months of incarceration and is the statutory maximum permitted under 18 U.S.C. § 1752.

To be clear, the government maintains that its initial recommendation of 21 months was appropriate in light of the nature and circumstances of Seitz's serious criminal conduct. And, in other cases where a § 1512 conviction was subsequently dismissed or vacated, the government has sought upward departures and/or variances, where appropriate, to accurately reflect the seriousness

3

of those defendants' offenses. *See, e.g.*, *United States v. Sparks*, 21-cr-87 (TJK), Gov't Sent. Memo., Doc. 139 at 27. In this case, the government is not seeking such a departure or variance solely because of the operative statutory maximum.

Seitz was an avid and willing participant in an unprecedented crime – in the days leading up to January 6, he told family members that he believed he was joining "a war between Good and Evil." In service of his goal, he joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. His offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Seitz "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87.

But nothing in Seitz's recalculated Guidelines reflect these facts. Seitz would face the same offense level if his disorderly conduct within the restricted perimeter of the Capitol Building had not endangered the democratic process or interfered with the peaceful transfer of power.[1] There is

---

[1] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, -- S.Ct. -- (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85.

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. "January 6th wasn't an ordinary violent riot but one that interfered with the counting of electoral votes and the peaceful transition of power, which is one of the bedrocks of our democracy." *United States v. Perkins*, 21-CR-147-CJN, Sent. Tr. at 53.

> [The defendant] just wanted to delay the certification. He wanted the election certification stopped. That's chilling to me. I mean, that is not a minor thing, in that through -- through acts of violence and intimidation, we're going to stop the most sacred day in our democracy from occurring, which is the certification of the election, because we want some more time to try and make our case because the dozens and dozens of courts that have considered the issue and have concluded there was not a problem with the election weren't enough, and because I want someone else to take another look at this. And so, therefore, I'm going to go down to the Capitol and I'm going to stop the certification of the election from occurring. So I think that the offense here, to my mind, is one of enormous gravity.

*United States v. Wyatt*, 23-CR-215-RDM, Sent. Tr. at 44.

5

Recently, in *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posted a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sent. Tr., at 87-88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and §5K2.21, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a

6

governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. The court also found an upward departure appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

While the Supreme Court's decision in *Fischer* has changed Seitz's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5 (cleaned up). Indeed, "*Fischer* does not mean that [the court] cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF 151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond

merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[2]

And the risk of another attack on the Capitol remains. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated." *United States v. Cleveland*, 21-CR-159-ABJ, Sent. Tr. at 94-95. If we are to prevent another January 6 and restore respect for the rule of law, sentences in these cases must send a message, and that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense.

Here, given the operative statutory maximum, the government is not seeking a departure or variance as it has in other post-*Fischer* cases. The government submits, however, that given the seriousness of Seitz's offense, the need to promote respect for the law, and the need for specific and general deterrence, a 12-month sentence in this case is more than justified in light of Seitz's own conduct: Seitz travelled to D.C. amid talk of "war" and once here, he did not hesitate to "storm the Capitol," despite learning of such plans from a militia. He climbed through a broken window, attempted to direct other rioters towards the Senate Chamber, "pushed and pushed" inside the building, thwarted police efforts to contain the rioters by opening a locked door, and then resisted officers' attempts to remove him once outside. That night, he celebrated and boasted about his conduct.

For all of these reasons, the government recommends that the Court impose a sentence of 12 months incarceration, the midpoint of the applicable guideline range; 12 months of supervised release; $500 in restitution; and a special assessment of $25.

---

[2] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY

By:    <u>/s/ Katherine E. Boyles</u>
        Katherine Boyles
        Assistant United States Attorney
        D. Conn. Fed. Bar No. PHV20325
        United States Attorney's Office
        601 D Street NW
        Washington, D.C. 20001
        Email: Katherine.Boyles@usdoj.gov
        Phone: 203-931-5088